Charles Lee McINTOSH, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18236.

United States Court of Appeals
Eighth Circuit.

June 24, 1966.

See also, 8 Cir., 341 F.2d 448.

Charles Lee McIntosh, pro se.

D. M. Statton, U. S. Atty., and Jerry E. Williams, Asst. U. S. Atty., Des Moines, Iowa, for appellee.

Before VAN OOSTERHOUT, BLACKMUN and GIBSON, Circuit Judges.

BLACKMUN, Circuit Judge.

On August 4, 1964, in the United States District Court for the Southern District of Iowa, a jury found Charles Lee McIntosh, hereinafter called the defendant, guilty of a 1961 violation of the National Motor Vehicle Theft Act, 18 U.S.C. § 2312. A four year sentence was imposed. This was to begin at the expiration of a sentence then being served by the defendant under commitment of the United States District Court for the Southern District of Ohio but, as provided by 18 U.S.C. § 4208(a) (2), the court specified that the defendant may become eligible for parole at such time as the board of parole may determine.

McIntosh, in August 1965, filed his in forma pauperis motion for a writ of error coram nobis seeking to vacate the 1964 judgment and to void any imprisonment thereunder. His asserted grounds were (a) double jeopardy because of the alleged absence of a formal judgment setting aside a September 1963 conviction and sentence in Ohio for the same offense, (b) insanity and incompetency to stand trial, (c) the prosecution's knowing use of false and perjured testimony,

and (d) denial of a Sixth Amendment right to be confronted with a material witness whom the government did not call.

Judge Stephenson denied the motion in its entirety. McIntosh appeals.

■■ The last three grounds specified in the defendant's motion are not now urged in his briefs on appeal. Accordingly, they are abandoned and need not be considered here. Maldonado v. United States, 325 F.2d 295, 298 (9 Cir. 1963); Puckett v. United States, 314 F. 2d 298, 301 (10 Cir. 1963); Carrollo v. United States, 141 F.2d 997, 999 (8 Cir. 1944). In any event, on this record they have no merit. We therefore are left with only the double jeopardy claim.

The defendant's position as to this is clarified if we indulge in a chronological review of the court proceedings. The files, now becoming voluminous, disclose, among many other things, the following:

1. On March 23, 1962, the defendant was indicted in the Southern District of Iowa and charged in a single count with a violation of § 2312 with respect to a 1959 diesel tractor.

2. McIntosh was arrested in Ohio only in 1963. In September of that year he executed a written consent, pursuant to Rule 20, Fed.R.Crim.P., to the transfer of his case to the Southern District of Ohio. It was docketed there as Criminal No. 10556.

3. On September 26, 1963, in the United States District Court for the Southern District of Ohio the defendant, who was represented by court-appointed counsel, pleaded guilty to the Iowa charge. At the same time he also pleaded guilty to the charge in another indictment, currently returned in the Ohio district and read to him, for a violation of 18 U.S.C. § 2313 with respect to a Ford automobile. This latter matter was Criminal No. 10550. On that day McIntosh was duly adjudged guilty and sentenced to three years on the Iowa charge and three years on the Ohio charge, the sentence to be served consecutively. The transcript of the sentencing procedure discloses that the defendant acknowledged prior receipt of a copy of one of the indictments and that the court at the time assumed this to be the Iowa one.

4. On February 11, 1964, the defendant filed with the Ohio court an in forma pauperis motion under 28 U.S.C. § 2255 asserting primarily his having been under the influence of an overdose of narcotics at the time of sentencing and his having entered his plea of guilty without understanding. In March McIntosh expanded his motion to allege, among other things, that he had not been given a copy of the Iowa indictment and that it had not been read to him. The court again appointed counsel for the defendant.

5. Hearing ensued in the Southern District of Ohio on April 6, 1964. At its conclusion Judge Peck filed a written memorandum opinion in the transferred Iowa criminal case, No. 10556,[1] and

1. This recites:

"It is not here contended that the sentence under the indictment returned in this District was not in all regards regular, but defendant has moved for a vacation of the sentence in this case on the ground that 'the court transcript shows that the defendant had not read, or even had presented to him, a copy of the indictment on which he was sentenced.' We are firmly of the conviction that at the time of the hearing everyone concerned, including the defendant himself and his experienced and well qualified attorney, understood that he had previously received a copy of the Iowa indictment and that it was the Ohio indictment that

had not been served. Had the reverse been true, it would have meant a duplication of presentment of the Ohio charge and none of the Iowa charge, which would have been quickly called to attention by the several persons in attendance intimately familiar with such proceedings. In this regard, it is noted that the defendant is little less than an expert in such matters himself, having had long familiarity with federal criminal court procedures.

"It is further noted that prior to the September 26th hearing the Court granted the defendant's motion for psychiatric evaluation and for a period of four weeks he underwent observation and treatment at

therein ordered (in addition to making the identical statement orally in the presence of the defendant and his counsel) "that the sentence hereinbefore imposed on September 26, 1963, should be and it is hereby vacated, and it is further ordered that the defendant should be and he is hereby permitted to withdraw his plea of guilty to the indictment herein". In another order filed April 23, 1964, in both Criminal Case No. 10550 and in Criminal Case No. 10556, and carrying the signatures of the defendant, his court-appointed attorney, the United States attorney, and the first assistant United States attorney, the Ohio court recognized the amendment of its former judgment and credited to the Ohio sentence the time McIntosh had already served. This order in its entirety is reproduced in the margin.[2]

6. On July 1, 1964, the Ohio court filed in No. 10556 still another memorandum and order reciting:

"On the 6th day of April, 1964, the defendant's motion was granted and an Order was entered vacating the sentence imposed by this Court in this cause on September 26, 1963, and authorizing the defendant to withdraw the plea of guilty and to plead over.

"Now on this 1st day of July, 1964, the attention of the Court is drawn to the record of this cause, which reflects that up to this date, the defendant has remained mute and has failed and neglected to withdraw his plea of guilty, and as a result, the orderly processing of this cause is unduly hampered and delayed."

The court accordingly, under Rule 11, Fed.R.Crim.P., rejected the guilty plea theretofore entered to the Iowa indictment and entered a plea of not guilty on the defendant's behalf and, pursuant to Rule 20, remanded the case to the Southern District of Iowa..

7. The trial by jury in the Iowa district took place on August 3 and 4, 1964, and resulted, as above noted, in the verdict of guilty and the four year sentence coupled with parole eligibility relief under § 4208(a) (2).

8. The defendant was permitted to appeal in forma pauperis in this court. His conviction was affirmed. McIntosh v. United States, 341 F.2d 448 (8 Cir. 1965). Certiorari was denied. 381 U.S. 947, 85 S.Ct. 1778, 14 L.Ed.2d 711. Petitions for rehearing were denied. 382 U.S. 875, 86 S.Ct. 652, 15 L.Ed.2d 542.

the Medical Center for Federal Prisoners, Springfield, Missouri. On September 17, 1963, this Court found him competent to stand trial. * * *

"However, it must be recognized that the bare transcript, which is of course devoid of the inflections and expressions which characterized the live proceeding, is not unambiguous. Further, after reading the transcript in the light most favorable to the defendant it could be concluded that he had not been served with the indictment from Iowa, and that although complied with in spirit the letter of Rule 10 F.R.Crim.P., had not been followed. We therefore conclude that the motion must be granted."

2. "Motion for Revocation of Sentence having been heard and granted in Criminal No. 10,556, and the defendant having achieved the relief which he sought thereby, other motions and matters now pending in Criminal No. 10,556 or Criminal No. 10,550, which were filed to achieve

the result now granted, are therefore superfluous, and the records of this Court are hereby cleared of any other action or complaint filed and pending prior to the date herein;

"Further, this Court, upon consideration of its vacating the sentence and plea of Criminal No. 10,556 against this defendant, and upon consideration that the Judgment and Commitment in Criminal No. 10,550 read in part as follows:

'It Is Adjudged that sentence in this cause is to begin at the expiration and legal termination of the sentence imposed this day in Criminal Cause No. 10,556 of this Court';

"IT IS ORDERED that the above-quoted language be stricken from that Judgment and Commitment and that the Amended Judgment and Commitment be entered and effective as of the 26th day of September, 1963. It is further ordered that all of the time served by the defendant under Criminal No. 10,556 be credited and treated as though served under Criminal No. 10,550."

9. Subsequently the defendant sought from this court a "writ of mandamus and prohibition" directed to Judge Stephenson of the Southern District of Iowa and based on a claim of an improper order granting a new trial. This application was denied. McIntosh v. Stephenson, 354 F.2d 978 (8 Cir. 1965). Certiorari was also denied. 383 U.S. 930, 86 S.Ct. 939, 15 L.Ed.2d 849.

10. McIntosh also sought relief from the United States Court of Appeals for the Sixth Circuit with respect to the Ohio court's 1964 orders. This was unsuccessful. Certiorari was denied, 382 U.S. 1029, 86 S.Ct. 652, 15 L.Ed.2d 542, and rehearing was denied, 383 U.S. 922, 86 S.Ct. 906, 15 L.Ed.2d 680.

The gist of the present proceeding, as we read McIntosh's papers, is that, despite the Ohio court's orders for the vacation of its sentence on the Iowa charge, a formal Ohio *judgment* to that effect was never entered; that the original Ohio judgment of conviction in No. 10556 on the Iowa charge still remains; and that the subsequent proceeding in Iowa therefore operated to place the defendant in jeopardy a second time in violation of the Fifth Amendment.

 The obvious and conclusive answer is that Judge Peck in the Ohio proceeding effectively and fully vacated the Ohio judgment on the Iowa charge prior to the Iowa trial. Certainly his oral statement and his written order could not be more clear to anyone, including the defendant, who chooses to read it intelligently. " * * * [T]he sentence hereinbefore imposed on September 23, 1963, should be and it is hereby vacated. * * * " In a criminal case "Final judgment * * * means sentence. The sentence is the judgment". Berman v. United States, 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204 (1937); Parr v. United States, 351 U.S. 513, 518, 76 S.Ct. 912, 100 L.Ed. 1377 (1956); Corey v. United States, 375 U.S. 169, 174, 84 S.Ct. 298, 11 L.Ed.2d 229 (1963). Thus, the vacation of the sentence in the criminal proceeding equates with and is the vacation of the judgment on the Iowa charge.

The decks were thereby cleared. The subsequent trial in Iowa did not place the defendant in jeopardy a second time. Relief from the Ohio judgment on the Iowa charge was precisely what the defendant's maneuvering in the Ohio court was designed to achieve. Having gained that result he may not now argue that it works to his benefit on a former jeopardy approach. United States ex rel. Jones v. Nash, 264 F.2d 610, 613 (8 Cir. 1959), cert. denied 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 and cases cited.

It is of interest to note, incidentally, that the Ohio Clerk's docket in No. 10556 contains the following self-explanatory minute for April 23, 1964:

"ORDER—vacating and setting aside the sentence in Cr. No. 10,556, ordering the correction of the Judgment and Commitment in Cr. No. 10550 by the issuance of an Amended Judgment and Commitment in which the clause that the sentence in Cr. No. 10,550 is to run consecutive to the sentence in Cr. 10556 and crediting the time served under Cr. No. 10,556 to Cr. No. 10,550—Amended Judgment and Commitment issued to the U. S. Marshal."

The defendant reveals some confusion, we feel, as between the criminal proceeding in the Ohio court and his post-conviction § 2255 matter there. He speaks at some length in his briefs of the necessity, and the absence, of a final judgment in the § 2255 proceeding and of that proceeding's civil character and, hence, its subservience to Rules 52(a) and 58, Fed. R.Civ.P. But we are not here concerned about the ultimate disposition and end of the Ohio § 2255 matter. We are concerned with the vacation of a judgment in the Ohio criminal proceeding No. 10556 on the Iowa charge. That has been effected and it was effected before the Iowa trial.

The defendant's reliance on Jenkins v. United States, 325 F.2d 942 (3 Cir. 1963), an appeal in a § 2255 proceeding, is wholly misplaced. *Jenkins* is also factually distinguishable for the only findings and conclusions there made were those uttered orally by the judge;

there was no opinion, no memorandum of decision with findings and conclusions, and no written order. The court said, p. 944 of 325 F.2d:

"No form of words and no peculiar formal act are necessary to evince rendition of a final judgment. The test is whether the language of the directive embodies the essential elements of a final decision and clearly evidences the judge's intention that it shall be his final act in the case." [footnotes omitted]

That standard was clearly met even in the criminal proceeding in Ohio.

It is apparent that the defendant's anguish is occasioned by the fact that his efforts to obtain relief from the sentence imposed by Judge Peck resulted in the imposition of a longer sentence by Judge Stephenson. He overlooks the fact that the longer sentence is accompanied by § 4208(a) (2) relief.[3]

We are not unmindful, for what it may be worth, that the defendant is well acquainted with criminal proceedings in the federal courts. In addition to his several appeals and post-conviction petitions in the present Dyer Act case he has had experience on other occasions. See McIntosh v. Pescor, 175 F.2d 95 (6 Cir. 1949); McIntosh v. United States, 176 F.2d 514 (8 Cir. 1949), cert. denied 338 U.S. 876, 70 S.Ct. 137, 94 L.Ed. 537, 339 U.S. 967, 70 S.Ct. 983, 94 L.Ed. 1376; McIntosh v. Steele, 184 F.2d 721 (8 Cir. 1950), cert. denied 340 U.S. 921, 71 S. Ct. 353, 95 L.Ed. 665; McIntosh ex rel. McIntosh v. Steele, 184 F.2d 723 (8 Cir.

1950). Furthermore, a reading of his briefs, court papers, and correspondence reveals an intelligent and knowledgeable personality. He is not one who has been misled or prejudiced. One begins to gain the impression that his continued harassment of courts and counsel approaches an abuse of the federal judicial process.

The district court's denial of the petition for writ of error coram nobis is affirmed.

---

3. At the time of imposition of sentence Judge Stephenson said:

"I'm going to give you a consecutive sentence. I'm going to give you four years instead of three years, but I am going to give you a 4208(a) sentence. As far as this Court is concerned, it is entirely up to the Board of Parole. There is not going to be any minimum prescribed. Now, you have already served on this last sentence since September, 1963, and I assume you would be eligible for parole in one year—one-third of your sentence. The Board of Parole, who are in touch with you daily, know more about it, what your situation is, and whether there is an opportunity for you to go straight. And I'm willing to abide by their determination. I'm not raising your sentence from three years to four years because you stood trial. I think that every defendant has a right to stand trial. I am raising it because I feel by giving you an '(a) (2) sentence' which makes you eligible for parole at such time as the Board of Parole might determine—I'm going to give you a four-year sentence because I'm hopeful it will be a sufficient deterrent when you do get out that it will keep you from committing crime again."